Lorraine **DABNEY**, Elizabeth Deakyne, Robert and Julie McGibbon, City of Philadelphia, City of Saint Paul, Honorable Stephen L. Neal, M.C., Honorable Stewart B. McKinney, M.C., Honorable S. William Green, M.C., Solar Lobby, Natural Resources Defense Council, League of Women Voters, National Audubon Society, Nypirg/Citizens Alliance, National Association of Solar Contractors, First Hub Credit Union, Wayne and Susan Nichols, Michael N. Corbett, Harry K. Schwartz, Paul W. Sullivan, Joseph Honick, State of New York, Plaintiffs,

v.

Ronald **REAGAN**, David A. Stockman, Samuel R. Pierce, James B. Edwards, Donald T. Regan, John R. Block, and Malcolm Baldridge, in their official capacities, and the United States Department of Housing and Urban Development, Defendants.

No. 82 Civ. 2231 CSH.

United States District Court, S.D. New York.

Oct. 19, 1982.

Steven Ferrey, National Consumer Law Center, Boston, Mass., Alan Miller, Natural Resources Defense Council, Washington, D.C., Eric Goldstein, Natural Resources Defense Council, New York City, Andre Dasent, Philadelphia, Pa., Ken Robinson, Atty. Gen., State of N.Y., New York City, for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., John S. Martin, U.S. Atty., New York City, Alphonse M. Alfano, Andrew M. Wolfe, Attys., Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs move for an order compelling defendants to comply, in certain designated respects, with this Court's Order of June 29, 1982. Defendants contend that, in the light of present circumstances, the order of compliance should not issue. Defendants are correct, and the present motion is denied.

The circumstances of the litigation are fully set forth in the Court's prior opinion, *Dabney v. Reagan*, 542 F.Supp. 756 (S.D.N.Y.1982), familiarity with which is assumed. Rejecting the defendants' contention that the complaint gave rise to no basis for judicial supervision of their activities, the Court directed them "to expedite all [Solar Energy and Energy Conservation] Bank implementation activities, and to make those funds appropriated for Bank use FY1982

available for disbursement to qualified applicants, as quickly as good faith discharge of the said defendants' responsibilities under the Act will permit..." *Id.* at 768. Defendant Pierce or his designated representative was ordered to file by August 30, 1982 an affidavit setting forth the implementation steps that had been taken; the parties were directed to appear at a status conference on September 2, 1982. Oral argument was held, and a further round of briefs submitted.

These additional submissions reveal that since this Court's Order of June 29, 1982, there have been significant developments.

The Board of the Bank made two basic policy decisions. The first was to operate the Bank by distributing its funds to states, for use in their energy conservation and solar program, rather than distributing funds directly to financial institutions and end-users. The second was to defer final drafting of regulations until proposals from interested states have been received and evaluated.

By Notice of Funding Availability ("NOFA") dated August 27, 1982, the Bank advised the states and territories that the Bank was in business and ready to receive proposals. A deadline of October 15, 1982 for the submission of proposals was given. Three states (Iowa, Pennsylvania and New Hampshire) and one territory (American Samoa) wrote to the Bank requesting an extension of that deadline. Under date of September 30, 1982, 20 members of Congress (including Messrs. Neal and McKinney, who are among the plaintiffs at bar) wrote to defendant Pierce to request a 30-day extension of the deadline, stating in part: "The States of California, Minnesota, Oregon, New Hampshire, Missouri and Ohio have informed us that this extension would result in substantially better programs being designed." This is also the general tenor of the appeals made directly to the Secretary. The Board has approved an extension for the submission of proposals to November 15, 1982.

As appears *infra,* plaintiffs are not satisfied with defendants' progress in implementing the Bank and its programs. But they are not critical of the Board's decision to funnel Bank funds through existing or newly designed state programs; and the reasons given for that policy decision are perfectly plausible.[1]

The advisory committees established by the Act were told of these policy decisions as a *fait accompli.* Their advice was not requested in advance. Insofar as appears from the latest papers, the Board does not presently contemplate asking the advisory committees for any advice.

Another development relates to filling the office of President of the Bank. On September 28, 1982 President Reagan nominated Robert W. Karpe as President of the Bank and submitted that nomination to the Senate for confirmation. Mr. Karpe currently serves as President of the Govern-

1. Those reasons are summarized in defendants' brief in opposition at 2:

"First, at the federal level, the Bank itself has only a small staff and no workable system for distributing Bank funds directly to end-users; establishing a new federal mechanism for direct distribution of Bank funds would be expensive and time-consuming. Second, at the state level, energy programs are already in place and the Bank's programs can be linked to them quickly and efficiently; moreover, the states are in a better position to assess localized needs for new solar energy and energy conservation assistance. Third, the Board's decision expedites the ultimate distribution of Bank funds by permitting the Bank to accomplish simultaneously a number of administrative tasks which would otherwise have to be accomplished seriatim.

While the States are preparing proposals in response to the NOFA, the Bank is now drafting regulations and meeting other administrative requirements. After the proposals are received, the evaluation process and the drafting of regulations can be completed together to insure that the Bank's programs will be responsive to demonstrated needs. Thereafter, successful proposals will be selected, the regulations will be submitted to Congress for legislative review pursuant to 42 U.S.C. § 3535(o), and the public will be notified of and given an opportunity to comment on the completed regulations. During the legislative review period, the States may solicit applications for Bank funds and make other final preparations for the distribution of Bank funds."

ment National Mortgage Association. Senate confirmation is pending.

Against the background, plaintiffs move for compliance with the Court's prior Order, and pray that the Court do the following:

"1. Order defendants to properly convene both Advisory Committees of the Bank, pursuant to 12 U.S.C. 3606 and 45 Fed.Reg. 78236–7, within 30 days, direct the Advisory Committees to issue a report to defendants within 30 days of their first meeting that addresses alternative means to expedite operation of the Bank and other recommendations to ensure compliance with the statute and Court Order, to convene the Advisory Committees as many as four times to facilitate completion of this task, and to make this report available to the Court;

"2. Order defendants to submit to the Senate of the United States within 30 days the nomination of an individual for confirmation as President of the Bank and within 30 days filed with the Court by affidavit a verification specifying who will serve as the full-time President of the Bank, pursuant to 12 U.S.C. 3605, as well as specify what other staff have been hired at what salary levels and on what dates to staff the Bank, and including an itemization of what tasks remain to be performed to render the Bank operational and when these tasks will be performed and when the Bank is expected to disburse funds; and

"3. Order defendants to stipulate within 30 days a date certain not later than November 15, 1982, when regulations will be drafted and submitted to the Congress; and

"4. Order the parties to appear on November 15 to review the status of compliance with the Orders of the Court."

These requests are treated in order.

*Advisory Committees*

The Act set up, "as part of the Bank," two advisory committees. One is the Energy Conservation Advisory Committee, 12 U.S.C. § 3606(a), and the second is the Solar Energy Advisory Committee, 12 U.S.C. § 3606(b). Each committee is composed of five members, to be appointed by the Board of the Bank from among individuals who are not officers or employees of any governmental entity, and who respectively represent the views of consumers, financial institutions, builders, architects and engineers, and the industry. The function of these committees, as specified in the Act, is to "provide advice to the Board for the purpose of assisting the Bank in carrying out" its activities.

On November 25, 1980, the then Secretary of HUD published the charters for the advisory committees, which he had approved as Chairman of the Board of Directors of the Bank. 45 Fed.Reg. 78235–78238. The charters were established pursuant to the provisions of the Federal Advisory Committee Act of 1972 ("FACA"), 5 U.S.C.App. I § 1 *et seq.* The charter of each of the advisory committees provides:

> "The function of the advisory committee shall be advisory only and all the matters under its consideration shall be determined, in accordance with law, by the Board of Directors of the Bank."

The limited objectives, scope and duties of advisory committees such as these is further articulated in FACA, § 10(e), (f), which provides:

> "(e) There shall be designated an officer or employee of the Federal Government to chair or attend each meeting of each advisory committee. The officer or employee so designated is authorized, whenever he determines it to be in the public interest, to adjourn any such meeting. No advisory committee shall conduct any meeting in the absence of that officer or employee.
>
> "(f) Advisory committees shall not hold any meetings except at the call of, or with the advance approval of, a designated officer or employee of the Federal Government, and in the case of advisory committees (other than Presidential advisory committees), with an agenda approved by such officer or employee."

Reverting to the charters of the Bank advisory committees, they each provide:

"7. Designated Federal Employee. In accordance with section 10(e) of FACA, the Secretary of Housing and Urban Development has designated the Executive Vice President for Energy Conservation to attend every advisory committee meeting.

"8. Meetings. The Energy Conservation Advisory Committee shall ordinarily convene in full session four times each year under the following conditions:

"a. The Designated Federal Employee may call, and will approve in advance the scheduling and agenda of, advisory committee meetings and subcommittee meetings after consultation with the advisory committee chairperson."

It is apparent from what has transpired since this Court's first intervention last June that the defendants have not made any meaningful use of the advisory committees, and show no present inclination to do so. Plaintiffs are aggrieved by that neglect. They ask the Court to order defendants to convene the advisory committees as many as four times; and to direct the committees themselves to issue reports to the defendants addressing their recommendations to the Bank.

■ The provisions of FACA make it clear that advisory committees such as these both meet and render advice to the governmental agencies involved at the pleasure of those agencies; and if it pleases the agency in question to refrain from convening the committee, or soliciting its advice, the agency is entirely at liberty to do so. That is particularly clear in view of FACA's legislative history. Section 10(b) of the statute as originally proposed provided "that each advisory committee shall meet not less than two times per year at the call of its chairman." H.Rep. 92–1017, 92nd Cong., 2d Sess. 9 (1972), reprinted in 1972 U.S.Code Cong. & Admin.News 3491, 3499. Apparently that requirement was a reaction to a 1970 committee report which revealed that at least 51 then existing advisory committees had not met for two years or more. However, the requirement that an advisory committee meet was not included in FACA as enacted; instead, the language of § 10(e), (f) was included, which clearly points in an entirely different direction.

■ I am aware that the committees' charters provide that they "shall ordinarily convene in full session four times each year...." But that is no more than a declaration of the intent of the then HUD Secretary who approved the charters. The charters do not, and legally cannot, abrogate the express provision in § 10(f) of FACA that advisory committees "shall not hold any meeting except at the call of, or with the advance approval of," the designated federal employee. Introducing FACA on the Senate floor, Senator Metcalf described one of its purposes as "to assure that the functions of Federal advisory committees shall be advisory only and that all matters under their consideration shall be determined solely by Federal officials and agencies." 118 Cong.Rec. 30,272. If a subsequent HUD Secretary or his designate, serving in the capacity of "designated federal employee" under FACA, prefers not to call meetings of the advisory committees, he does not have to. The frustrations of committee members is understandable. It may not be relieved in the courts.

■ *A fortiori,* there is no basis for the Court to direct the committees to report on their activities. Both activities and reports thereon are for the agency to request or not, as the case may be.

*Nomination of a President of the Bank*

■ As noted *supra,* President Reagan has nominated Robert W. Karpe to the Presidency of the Bank. That nomination is presently awaiting confirmation action by the Senate.

Plaintiffs challenge that nomination on the ground that Mr. Karpe would not be a "full-time President." Plaintiffs' claim is factually correct, since Karpe currently serves as President of the Government National Mortgage Association ("GNMA"), another office within HUD, and it is clear that he intends to operate in both capacities if confirmed as President of the Bank.

There is, however, no legal requirement that the President of the Bank serve in a full-time capacity. All the statute says of the President of the Bank is that the office:

> "... shall be filled by an individual appointed by the President of the United States with the advice and consent of the Senate and which shall be compensated at the rate now or thereafter prescribed for executive level V by section 5316 of Title 5."

Plaintiffs argue: "The statute, by mandating a designated slot and salary level for a full-time position, requires the appointment of a full-time President." Brief at 7. This is a *non sequitur*. No statute presently prohibits dual office-holding within the executive branch. There was at one time such a law, 5 U.S.C. § 62 (1958 ed.), but it was repealed in 1964, and the present statute does no more than prohibit, with some exceptions, individuals holding dual offices from receiving dual compensation. 5 U.S.C. § 5533. There are several recent examples of individuals holding more than one office at a time in the higher echelons of the executive branch. See defendants' brief in opposition to motion for compliance at 7. There is no basis to assume that the defendants would violate the restrictions of § 5533 in respect of Mr. Karpe's compensation. Perceiving no requirement in the Act in question that the President of the Bank serve on a "full-time" basis, plaintiffs' motion fails at the threshold. I need not reach the other contentions made by defendants.

*Deadline for Submission of Regulations to Congress*

█ The Board of the Bank has determined that the drafting of regulations should be deferred until proposals for use of the appropriated funds have been received from interested states. As noted, the Board has extended the time for submission of such proposals from October 15 to November 15, 1982. Unless I conclude that the Board of the Bank is proceeding in a legally impermissible fashion, I must perforce reject the plaintiffs' demand that I order the drafting and submission of regulations not later than November 15, 1982.

Reasonable men might differ as to the desirability of deferring the drafting of regulations until submissions and proposals are at hand. Defendants argue that if they "are compelled to complete the regulations before the State proposals have been received and evaluated, the regulations may not respond to the needs of the States as reflected in their proposals, with the result that either the regulations or proposals may have to be revised and the distribution of Bank funds may have to be delayed until those revisions can be completed." Brief in opposition at 9. On the other hand, the 20 congressmen who wrote to Secretary Pierce on September 30, 1982 to urge an extension of time for the submission of proposals, also urge the Secretary:

> "Do not wait to examine applications before developing regulations to implement the Bank, but issue regulations as quickly as possible, and submit them to Congress by November 15."

The timing of the submission of regulations, in relation to the receipt of submissions, rests within the discretion of the agency. In the absence of a plain abuse of discretion, and I find none here, the Court would not undertake to substitute its judgment for that of the agency. *Securities and Exchange Commission v. Chenery,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

*Conclusion*

It follows that none of the specific demands made by plaintiffs at this time will be granted. Essentially that is so because (1) I am satisfied that the defendants are moving in good faith to implement the Act; and (2) the actions they have taken to date fall within that area of executive discretion where judicial intervention is inappropriate.

However, in order to ensure long term compliance with the Court's June 29, 1982 Order, continued judicial supervision is appropriate. In consequence, counsel for defendants are directed to file and serve a further affidavit detailing the status of the matter on December 1, 1982. That affidavit is to constitute a complete status report, and must include, *inter alia,* (1) a statement

as to the status of proposals received from the states, their evaluation and processing; and (2) the date on which regulations were forwarded to the Congress, or the date on which it is anticipated that this will be accomplished.

Motion for compliance denied; the parties are directed to proceed in accordance with the terms of this opinion.

It is So Ordered.